YU, Appellant,

v.

ZHANG, Appellee.

[Cite as *Yu v. Zhang,* 175 Ohio App.3d 83, 2008-Ohio-400.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 06–CA–146.

Decided Feb. 1, 2008.

Kathy L. Ellison, for appellant.

Phillip L. Beard, for appellee.

BROGAN, Judge.

{¶ 1} In this divorce case, Quiren Yu appeals from the judgment of the Common Pleas Court of Greene County, adopting the magistrate's decision from October 6, 2006, which found that the court lacked jurisdiction to consider Yu's

claim for legal separation from Evan Y.W. Zhang. According to the trial court, the parties had previously been divorced in China.

{¶ 2} Preliminarily, we note that hearings were conducted before a magistrate on May 4, 2006, July 25, 2006, and September 20, 2006. No transcript of these hearings was filed with Yu's objections to the magistrate's decision, nor has a transcript been filed in the present appeal. Therefore, our review is limited to the facts contained in the lower court's findings of fact from the magistrate's decision and the documents raised in relation to these findings of fact. See *Davis v. Davis,* Wood App. No. WD–04–020, 2004-Ohio-6892, 2004 WL 2924344, at ¶ 11–13.

{¶ 3} The magistrate's decision provides, "Ms. Yu is 69 years old and resides with her son in Beavercreek, Ohio. She is Chinese and does not speak or write the English language. She received a degree in China in 1964 in Mechanical Engineering. She worked at a factory in Shanghai in the drafting department until she retired at the age of 55. In 1971 she gave birth to her son Evan. She was married to Evan Zhang in 1970. Around 1992 is when her husband came to the United States and she remained in China. She testified that she lived on her retirement and her husband would periodically send her money. She testified that after her retirement she only saw her husband once or twice in a 7–8 year period. Her husband applied for her to come to the United States and she moved here in January 2000.

{¶ 4} "On October 17, 2000, a divorce was granted in China. Quiren Yu testified that she was not aware of any filing of a Chinese divorce. She denies ever writing any property agreement or signing any notarized documents. She testified she believes the money that she received from her husband was based on his obligation to support her as his spouse. She agrees that she received $30,000 from Mr. Zhang as well as $300.00 per month.

{¶ 5} "Evan Zhang testified that he started the divorce proceedings in China before Quiren Yu arrived in the United States. He testified that Quiren Yu wrote the property conditions and both parties took the papers to National City Bank for their signatures to be notarized. Mr. Zhang testified that Quiren's sister tried to represent her but Ms. Yu did not wish this. Evan Zhang had a friend represent him in China and the divorce was granted in October 2000.

{¶ 6} "In January 2001, Mr. Zhang remarried. Mr. Zhang testified that he send [sic] Quiren Yu $300.00 per month based upon the divorce agreement. He further made several payments equaling the $30,000. He indicates that the property division agreement is in Quiren Yu's handwriting and was signed by both of them in front of a notary. He indicated that Ms. Yu showed her passport as her form of I.D. He states that Ms. Yu never asked the values of any of the assets and she could have chosen to obtain an attorney but did not do so.

{¶ 7} "The Court is in possession of a complete divorce from the country of China. This divorce was unable to be translated based on the cost. Ms. Yu testified that her signatures on those papers are not her actual signatures. Mr. Zhang testified that he would not have paid her the $30,000 had it not been part of the divorce agreement.

{¶ 8} "This Magistrate does not find Quiren Yu to be a credible witness. She has a degree in Mechanical Engineering, and certain questions she was able to answer very intelligently. When it came to questions about her signature, she was not sure as to which signatures were hers and which were her son's. She further denied signing the Affidavit of Income and Expenses which was signed in her attorney's office in front of a notary there. This Magistrate further finds that over time during the marriage, Mr. Zhang would periodically send Ms. Yu money. This did not appear to be on a monthly basis nor in large lump sum amounts. Therefore, this Magistrate finds that it is credible that a divorce was granted in China and based upon the property settlement, Mr. Zhang complied with the Chinese divorce.

{¶ 9} "Therefore, this Magistrate finds that the parties were divorced in the country of China, and therefore this court has no jurisdiction over the parties and this case. The Complaint for Divorce and Answer and Counterclaim are hereby dismissed."

{¶ 10} Yu filed an objection to the magistrate's decision, in which she argued that the Chinese court lacked jurisdiction to grant the parties' divorce because neither Yu nor Zhang was a resident of China at the time of the divorce. To support this contention, she referred to Defendant's Exhibit "N," a document indicating that the parties signed a Chinese divorce petition on March 15, 2000. In conjunction, Yu also provided the following translation of the Law of Civil Procedure of the People's Republic of China, allegedly as it relates to the residency requirement when filing for a divorce: " 'A civil suit against a citizen comes under the jurisdiction of the people's court *at the place where the defendant is domiciled*; where the defendant's domicile and regular abode is different, the case comes under the jurisdiction of the people's court at the place of his regular abode.' " (Emphasis added.) (Pl.'s Objections to Magistrate's Decision and Order at 4, citing Law of Civil Procedure of the People's Republic of China, Art. XXII (Apr. 9, 1991), available at http://www.lehmanlaw.com/ resource-centre/laws-and-regulations/civil-proceedings/law-of-civil-procedure-of-the-peo-ples-republic-of-china-1991.html.) According to Yu, Zhang did not meet the residency requirement per Chinese civil procedure because Yu, the defendant, had moved to the United States in January 2000—approximately three months before the petition for divorce was signed. Yu did not file a transcript in support of this argument, claiming that the basis of her objection is a question of law.

{¶ 11} In response, Zhang asserted initially that transcripts of the proceedings are necessary because Yu's objections involve questions of fact, as well as a question of law. He further argues that Zhang initiated the divorce proceeding in China while Yu still resided there, pointing out that the magistrate had made the same finding of fact in her decision. Hence, Zhang contends that the trial court should recognize the foreign divorce decree, because subject-matter jurisdiction was met per Yu's residency in China.

{¶ 12} On November 9, 2006, the trial court overruled Yu's objections and adopted the decision of the magistrate. In its entry, the court pointed out that Yu had asserted certain facts and findings in support of her argument. Due to her failure to file a transcript, however, the court stated that it had no basis upon which to review Yu's factual objections.

{¶ 13} Yu filed a timely notice of appeal from this judgment, assigning the following errors for our review:

{¶ 14} I. "The Trial Court erred in recognizing a divorce granted by a foreign court which had no jurisdiction over the parties when it terminated their marriage."

{¶ 15} II. "The Trial Court acted in an arbitrary manner by refusing to consider the substance of appellant's objections."

{¶ 16} Initially, we note that the issue of whether a trial court has subject-matter jurisdiction over a cause of action is generally a question of law that an appellate court reviews independently of the trial court's decision. See *McDaniel v. McDaniel*, Warren App. No. CA2006–12–142, 2007-Ohio-4220, 2007 WL 2350124, at ¶ 9, citing *Shockey v. Fouty* (1995), 106 Ohio App.3d 420, 424, 666 N.E.2d 304. In the present matter, however, the issue of jurisdiction involves resolving a factual dispute, i.e., whether Yu resided in China at the time Zhang initiated the foreign divorce proceedings. As we stated above, this court's review is limited to the facts contained in the magistrate's decision because Yu failed to supply a transcript of the proceedings below.[1] When a party objects to a factual

---

1. {¶ a} We note that Yu filed a statement regarding a transcript pursuant to App.R. 9(B). This rule states, "Unless the entire transcript is to be included, the appellant, with the notice of appeal, shall file with the clerk of the trial court and serve on the appellee * * * a statement that no transcript is necessary * * *. If the appellee considers a transcript of other parts of the proceedings necessary, the appellee, within ten days after the service of the statement of the appellant, shall file and serve on the appellant a designation of additional parts to be included." Yu asserted that no transcript was necessary on appeal because the basis of her argument is a question of law. She further argues that Zhang waived his right to object to her failure to provide a transcript by not filing a response under App.R. 9(B) within the prescribed ten days.

{¶ b} This argument lacks merit. Yu's statement attached to her notice of appeal does nothing to reconcile her failure to provide the trial court with a transcript at the time she

finding in a magistrate's decision, whether or not specifically designated as a factual finding, he or she must supply the trial court with a transcript of the magistrate's hearing or an affidavit of the relevant evidence presented at the hearing. Civ.R. 53(D)(3)(b)(iii). The Supreme Court of Ohio has established the consequences on appeal of failing to supply the appropriate transcript or affidavit as (1) "appellate review of the court's findings [being] limited to whether the trial court abused its discretion in adopting the referee's report" and (2) "the appellate court [being] precluded from considering the transcript of the hearing submitted with the appellate record." (Citations omitted.) *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 730, 654 N.E.2d 1254. Thus, we review the instant appeal "to determine whether the trial court's application of the law to its factual findings constituted an abuse of discretion." Id. An "abuse of discretion" means more than an error of law or judgment; instead, the term connotes a decision that is unreasonable, arbitrary, or unconscionable. (Citations omitted.) *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 17} Upon review, we find that the trial court did not abuse its discretion in adopting the magistrate's decision. Limited to the magistrate's factual findings, the court could reasonably conclude that the country of China had subject-matter jurisdiction over the parties' divorce. Thus, the judgment of the trial court is affirmed.

■ {¶ 18} In order to facilitate the disposition of this appeal, we will address appellant's assignments of error together. Yu contends that the trial court erred in adopting the magistrate's decision, because the Chinese court lacked jurisdiction over the cause of action when it granted the divorce. Yu further argues that this issue is a question of law, thus eliminating the need for her to submit a transcript with her objections in the trial court. For the following reasons, we disagree.

■■ {¶ 19} First, contrary to Yu's argument, her defense based upon lack of subject-matter jurisdiction is clearly fact dependent. Resolution of this issue turns on whether Yu was a resident of China or the United States at the time Zhang initiated the divorce proceedings. Yu states in her brief that she was residing in China at the time Zhang signed an initial divorce request, but that she had become a permanent citizen of the United States by the date the actual divorce petition was signed, March 15, 2000, and the date on which the Shanghai

---

objected to the magistrate's decision. It is that omission that Zhang contends is relevant to the present appeal. Moreover, if the trial court did not have a transcript to review Yu's objections, this court is precluded from considering a transcript filed for the first time as part of the record on appeal. See *Daniel v. Daniel*, Miami App. No. 2005CA9, 2006-Ohio-411, 2006 WL 235052, at ¶ 13.

court opened the case, May 12, 2000. The magistrate found simply that Zhang "started the divorce proceedings in China before Quiren Yu arrived in the United States," without citing any documents. In the absence of a transcript of the proceedings, the trial court had to defer to the factual determinations made by the magistrate, because she was in the best position to determine the weight and credibility of the evidence. See *Natsis v. Natsis,* Cuyahoga App. No. 80793, 2002-Ohio-7058, 2002 WL 31838501, at ¶ 24. Likewise, this court is bound by those same factual findings, and our review is limited to whether the trial court abused its discretion in adopting the magistrate's decision.

{¶ 20} Moreover, we must reject Yu's argument that resolution of the residency issue may be based on documents not identified in the magistrate's decision. "Without a transcript, * * * neither the trial court nor a reviewing court would know whether any exhibits not identified by the magistrate were admitted, authenticated, or ever actually introduced into evidence. A review of such exhibits * * * exceeds the proper boundaries of appellate review." Id. at ¶ 25. But see *Natsis,* 2002-Ohio-7058, 2002 WL 31838501, at ¶ 36 (O'Donnell, J., dissenting) (holding that a trial court has a duty to examine the entire record, including all physical documentary evidence, in order to reach an equitable result).

{¶ 21} Here, Yu's reliance on the documents dated March 15, 2000, and May 12, 2000, is futile, for nowhere in the magistrate's decision does she identify them as bases for her findings. Accordingly, we hold that the trial court did not abuse its discretion in finding that Zhang had initiated the divorce proceedings while Yu was still a permanent resident of Shanghai.

{¶ 22} Next, relying on the factual findings of the magistrate, we must determine whether Yu has demonstrated any error in the magistrate's application of law to those facts. The focal point of our discussion is the doctrine of comity. "Comity" has been defined as "courtesy, complacence, respect, a willingness to grant a privilege, not as a matter of right but out of deference and good will." *Bobala v. Bobala* (1940), 68 Ohio App. 63, 71, 20 O.O. 45, 33 N.E.2d 845. In the judicial context, this term stands for "a principle in accordance with which the courts in one state or jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect." Id. Specific to the case at bar, comity is an Ohio court's recognition of a foreign decree as a matter of courtesy rather than of right. *Mir v. Birjandi,* Greene App. Nos. 2006 CA 63, 2006 CA 71, and 2006 CA 72, 2007-Ohio-3444, 2007 WL 1934219, at ¶ 13; *State ex rel. Lee v. Trumbull Cty. Probate Court* (1998), 83 Ohio St.3d 369, 374, 700 N.E.2d 4. " '[T]he several states of the United States are empowered, if they freely elect to do so, to recognize the validity of certain judicial decrees of foreign governments where they are found by the state of the

forum to be valid under the law of the foreign state, and where such recognition is harmonious with the public policy of the forum state, taking into consideration all of the relevant facts of the particular case.' " *Mir,* 2007-Ohio-3444, 2007 WL 1934219, at ¶ 13, quoting *Yoder v. Yoder* (1970), 24 Ohio App.2d 71, 72, 53 O.O.2d 193, 263 N.E.2d 913.

{¶ 23} In *Bobala,* the Seventh District affirmed the trial court's refusal to recognize a Mexican divorce decree, where the appellant-husband failed to acquire a bona fide residence in Mexico, thus rendering the foreign court without subject matter jurisdiction to consider his complaint. *Bobala,* 68 Ohio App. 63 at 70, 20 O.O. 45, 33 N.E.2d 845. There, a threshold factor for not recognizing the validity of the foreign decree was the husband's violation of an injunction issued by the Ohio court restraining him from prosecuting his divorce proceedings in Mexico. Id. at 71, 20 O.O. 45, 33 N.E.2d 845. This conduct, constituting a fraud on the local court, in addition to the husband's failure to establish residency in Mexico and the appellee-wife's appearance through counsel in the Mexican court, was sufficient to justify the trial court's refusal to respect the foreign divorce. Id. at 71–72, 20 O.O. 45, 33 N.E.2d 845.

{¶ 24} Similarly, in *Smith v. Smith* (1943), 72 Ohio App. 203, 27 O.O. 79, 50 N.E.2d 889, the First District affirmed the lower court's opinion that held a Mexican divorce decree null and void, where the parties, residents of New Jersey, never established residency in Mexico and never appeared in Mexico during any of the divorce proceedings. Id. at 205, 27 O.O. 79, 50 N.E.2d 889. In essence, the parties sought a foreign divorce decree as a way of evading local law. Id. at 206, 27 O.O. 79, 50 N.E.2d 889. According to the court, "[t]he marriage status which [the Mexican divorce decree] purports to dissolve did not arise under Mexican law, as the parties had never been in Mexico at any time, it had never existed because of that law and its recognition of the marital status, arising and continuing solely by virtue of the laws of New Jersey, was for the sole purpose of dissolving that relationship between persons who at the time owed it no obligation, duty, or allegiance, but, on the contrary, owed all their allegiance to the United States of America. Whatever recognition it is given by any State of the United States results from comity and not from any constitutional or treaty provision and there is no constitutional provision and we have been cited to no treaty provision. * * * We believe reason and authority support the view that a state or nation will accord no recognition or validity to the acts of nationals who seek to evade the restraints imposed by their own state or nation by invoking the action of another state or nation to which they owe no duty or allegiance, and that the action of such other country through whatever department—judicial or otherwise—will be given no recognition ex proprio vigore by the state or nation which created the legal relation it seeks to affect. It seems to us that a contrary

holding pushes the rule of comity to the point of sanctioning the intrusion of a foreign power into the internal affairs of a nation." Id. at 206–207, 27 O.O. 79, 50 N.E.2d 889.

{¶ 25} In the present matter, the burden of demonstrating to the trial court that the laws of the Chinese court should not be given effect was upon the appellant. Yu cites *Bobala* and *Smith* for the proposition that Ohio courts will not recognize a foreign divorce when neither the husband nor the wife was a resident of the foreign country at the time of the divorce. At the same time, she offers some proof of Chinese civil procedure, which provides that a complaint in a civil suit must be filed at the place where the defendant is domiciled. Given the magistrate's finding that Zhang initiated the divorce in Shanghai while Yu still lived at the parties' marital residence there, the court may reasonably conclude that the Chinese court had subject-matter jurisdiction to hear the complaint.

{¶ 26} Furthermore, we find the events surrounding the subject marriage and divorce to be distinguishable from those in both *Bobala* and *Smith*. Here, the marriage status between Yu and Zhang arose under Chinese law and existed because of that law and the recognition of it. At the time Zhang sought to dissolve his marriage, he still had an obligation to and direct connection with the Chinese system because Yu had, up to that point, been a permanent resident of Shanghai. Moreover, there is no indication in the magistrate's decision that Zhang's conduct was an effort to evade the restraints of Ohio law. In the very least, his decision to initiate the proceedings in China was for the benefit of Yu as a resident there.

{¶ 27} We acknowledge Yu's argument that the divorce granted in China was executed without her awareness of any filings. However, absent evidence that the Chinese court lacked jurisdiction over the cause of action, a burden we find Yu failed to meet, any claimed fraud perpetrated upon that court would have to be raised *before that court* for a determination of the issue. See *Bobala*, 68 Ohio App. at 70, 20 O.O. 45, 33 N.E.2d 845.

{¶ 28} Thus, we hold that the trial court did not abuse its discretion in adopting the magistrate's decision to dismiss this matter for lack of subject-matter jurisdiction. Yu's assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

FAIN and GRADY, JJ., concur.