TYRRELL, GUARDIANSHIP, IN RE.

Probate Court, Preble County.

No. 20467.

WILLIAMS, P. J. An application has been filed for the appointment of a guardian of the person and estate of Walter S. Tyrrell.

In Chambers, immediately preceding the hearing, the proponent requested that two medical doctors, of their choosing, be permitted to examine Mr. Tyrrell. This request was granted. For approximately fifteen minutes they had the opportunity to examine the alleged ward in the jury room.

The alleged ward is an elderly gentleman 85 years of age, who was brought to the courtroom in a wheel chair. He was neatly attired in a blue suit, colored shirt and red necktie. His flowing white hair was combed and parted. His face bore no evidence of an adverse or hard life. His hands and fingers were smooth and soft. His very appearance told one that he had seen much better days. Throughout the hearing, he sat at the opponents table and followed the testimony of the witnesses quite carefully.

The testimony of the doctors for the proponents was to the effect that a guardian was needed because the alleged ward was subject to undue influence. Cross-examination disclosed that one of the examiners based his opinion, not only upon what he had elicited, but also upon what he had heard. The one medical examiner asked Mr. Tyrrell why he had given money to Mrs. Wise and he said that he had given it to her because he felt that she needed it. It is indeed unfortunate that the medical examiners had a limited time in which to examine the patient.

The proponents then called to the witness stand the staff

from the bank in which funds of Mr. Tyrrell were deposited. Their testimony was to the effect that Mr. Tyrrell had spent some $9,000.00 through his checking account since March 1, 1960. The ledger sheets further indicated that some of the money which had been drawn from the savings account had not been deposited in the checking account. In view of this, the Court has no idea as to the exact amount of money which Mr. Tyrrell has spent in the last two years, but it can be safely said that he has spent more than $9,000.00.

It is undisputed that Mr. Tyrrell has been an individual who had the good fortune of making considerable money in his earlier days and he also was a gentleman with expensive tastes. The witnesses had knowledge of the expensive parties which he had given for the benefit of his friends. Approximately twenty years ago, when his earning days were over, he retrenched and began to live within his income. The ward now has as his life's savings some ten thousand dollars worth of bank stock.

The opponents claim that Mr. Tyrrell is the same person today that he was earlier in his life; that he is still a spender and one who is extravagant and that he is still showering gifts.

To substantiate the fact that he is still shrewd, keen and able, they have offered the testimony of numerous witnesses who can testify concerning the recent business dealings of Mr. Tyrrell. This pointed to the fact that he had purchased a diamond ring for less than the normal selling price; that he had purchased a grave marker which cost only several hundred dollars and that he had made funeral arrangements for less than $1,000.00.

The evidence discloses that since October of 1961 he has given Mrs. Wise in excess of Two Thousand Dollars. These have been checks ranging in amounts from ten to fifty dollars.

In applying the law to the facts of this situation, the Court must follow the rules as announced in *In re Guardianship of Wilson*, 23 Ohio App., 390. In that case the Court said, "That the Court, before appointing a guardian for an alleged incompetent, should be fully and completely satisfied that the claimed infirmity or infirmities of the alleged incompetent are of such a nature and character as to prevent such person from fully and completely protecting herself and property interests from

those about her who would be inclined to and would take advantage of such person in the way of securing her property or means without giving proper service or value therefor.'' This case has been recently followed and approved by our own Court of Appeals, in the case of *In re Harris*, 73 Ohio Law Abs., 97. In applying this principle as enunciated, the Court must first find that a mental infirmity exists, then secondly, find that said infirmity prevents him from dealing at arms length.

Mental illness, as defined by the Revised Code of Ohio is as follows: ''Mental illness,'' ''mentally ill,'' ''Mental disease,'' or ''mental disorder,'' means an illness which so lessens the capacity of the person to use self-control, judgment, and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under treatment, care, supervision, guidance, or control.

The testimony disclosed that the gentleman still had a remarkable memory for past events, which in turn indicates that at one time he had had an exceptionally keen, retentive mind. With respect to the present status of the individual, the Court observed the following: that his smile at times is not normal; his eyes do not focus properly at all times; his gait and reflexes are not normal; and that he is not laying his cane aside, but is dropping it.

These are indications of the lessening of the gentleman's mental capacities. Just what has caused this is not known to the Court. Perhaps there has been arterio sclerosis or cerebral accident. In any event, there has been a deterioration which would be called mental illness.

The second question which must be answered is, can he deal at arm's length? There are instances which have been cited which indicate that he can. However, this gentleman has parted with some two thousand dollars during the last six months and there is no indication that he received proper service or value therefor. In view of this, the Court must find, and does so find, that he is subject to undue influence.

The necessary elements to establish a guardianship having been substantiated, it is the finding of the Court that a guardian of the person and estate be appointed.

Exceptions are hereby saved to all the parties. Let an Entry be prepared accordingly.