IN RE [GUARDIANSHIP] OF CORLESS.

(No. 79-11-0104—Decided May 13, 1981.)

*Mr. Clem F. Imfeld, Jr.,* for appellant.
*Mr. James F. Schnell,* for appellee.

*Per Curiam.* This cause came on to be heard upon the appeal, transcript of the docket, journal entries and original papers from the Court of Common Pleas, Probate Division, Butler County, Ohio, transcript of proceedings, briefs and oral arguments of counsel.

This matter arises from an application for appointment of a guardian for the person and estate of Cora Smith Corless, appellant herein, an alleged mental incompetent. This application was filed by appellee, Janet Shelley, a granddaughter of Mrs. Corless. On her application, appellee estimated the probable value of appellant's estate as being $335,000, and stated that the guardianship was necessary in order to preserve and protect the assets of the appellant.

A hearing on the application was scheduled by the Butler County Probate Court and notice was issued to all of the known next of kin named in appellee's application herein. The return of service made by the Butler County Sheriff indicates all were served. However, the return shows that service on Cora Smith Corless was made "by serving Helen Hann, custodian of said incompetent."

After several continuances granted upon the request of the appellee, a hearing was scheduled for September 13, 1979. At this hearing, appellant was not present, but was represented by counsel who objected to the proceeding on the basis that a guardian was not necessary. Counsel for appellee objected to the court proceeding without the presence of appellant. The referee overruled the objection and the matter was heard. No medical report concerning the mental condition of Mrs. Corless was submitted by either appellee or counsel for appellant. Testimony was given by appellee, each of the next of kin, and a priest who had visited with appellant.

At the conclusion of the hearing, the referee read the deposition of appellant which had been taken March 6, 1979. Following this, it was the report and recommendation of the referee that appellee be appointed guardian. The report included a finding that Mrs. Corless was both physically and mentally incompetent.

R.C. 2111.02 provides in part:

"When found necessary, the probate court on its own motion or an application by any interested party shall appoint a guardian of the person, the estate, or both, of a minor, or incompetent, provided the person for whom the guardian is to be appointed is a resident of the county or has a legal settlement therein and, except in the case of a minor, has had the opportunity to have the assistance of counsel in the proceeding for the appointment of such guardian.

"If a person is incompetent due to

physical disability, the consent of the incompetent must first be obtained before the appointment of a guardian for him, and such person may select a guardian who shall be appointed if a suitable person."

Appellee filed her application in accordance with R.C. 2111.03 and 2111.04.

R.C. 2111.04 provides in part as follows:

"No guardian of the person, the estate, or both shall be appointed until at least three days after the probate court has caused written notice, setting forth the time and place of the hearing, to be served upon the following persons:

"* * *

"(B) In the appointment of the guardian of an incompetent, notice shall be served:

"(1) Upon the person for whom appointment is sought by personal service.

"* * *

"Notice may not be waived by the person for whom the appointment is sought."

It is apparent from examining the return of service in this matter that personal service on Cora Smith Corless was never perfected as required by R.C. 2111.04(B)(1). Before addressing appellant's assignments of error, this court finds that the trial court was without jurisdiction. Therefore the matter must be reversed and this cause is dismissed.

In the case of *In re Guardianship of Reynolds* (1956), 103 Ohio App. 102 [3 O.O.2d 175], the court, at page 106, stated:

"It has recently been held that in a proceeding for an adjudication of incompetency of a resident, compliance with the provisions of Section 2111.04, Revised Code, with respect to personal service is mandatory before the court acquires jurisdiction, and that a judgment declaring such person incompetent and the appointment of a guardian for his person and estate are void for lack of due process when such person has not been personally served with notice." (Citations omitted.)

See, also, *Horn* v. *Childers* (1959), 116 Ohio App. 175 [22 O.O.2d 34]; *In re Guardianship of Kelley* (1964), 1 Ohio App. 2d 137 [3 O.O.2d 56].

Appellant did not raise this issue at trial or in her assignments of error. However, this court may raise such, *sua sponte*. As the learned Judge McCormac wrote:

"Although lack of subject-matter jurisdiction was not asserted previously in this action, it may be raised, *sua sponte*, by the court at any stage of the proceedings. Civ. R. 12(H). The lack of subject-matter jurisdiction may be raised for the first time on appeal. *Jenkins* v. *Keller* (1966), 6 Ohio St. 2d 122, 216 N.E.2d 379 [35 O.O.2d 147]. The parties may not, by stipulation or agreement, confer subject-matter jurisdiction on a court, where subject-matter jurisdiction is otherwise lacking." *Fox* v. *Eaton Corp.* (1976), 48 Ohio St. 2d 236, 238 [2 O.O.3d 408]. This court finds this reasoning controlling in this matter.

When an application for appointment of a guardian is made and personal service is not perfected on the person for whom appointment is sought pursuant to R.C. 2111.04(B)(1), the trial court is without jurisdiction to appoint a guardian for such person and the cause must be dismissed.

However, this court feels compelled to comment on the assignments of error presented by appellant. These will be considered in reverse order.

Appellant's fourth assignment of error is in essence that the trial court erred in appointing a guardian on the basis of physical incapacity, without having either the consent of the ward, or without giving the ward a right to choose her own guardian. This assignment is without merit in as much as the trial court found mental incapacity as the basis for appointing a guardian.

Appellant's third assignment of error

is that the trial court erred in not reading and considering the deposition of Cora Smith Corless. However, the referee in the trial court included in the record his affidavit that he had read the deposition, and that he considered the contents of that deposition when he reported his findings and made his recommendations to the trial court. Thus, this assignment is not well taken.

We will consider appellant's first and second assignments of error together. In essence, these two assignments are that the trial court was without sufficient evidence to find mental incapacity where there was no personal interview of the proposed ward by the court and no medical report. This court is compelled to address these issues in the interest of judicial efficiency should there be a re-hearing of this matter. Having thoroughly reviewed the entire transcript and record in this matter, this court notes that the finding that Cora Smith Corless is mentally incompetent is not supported by sufficient weight of the evidence.

When the proposed ward objects to the guardianship being imposed upon her, the trial court must be extremely cautious in proceeding. Both appellant and appellee have cited the case of *In re Tyrrell* (1962), 92 Ohio Law Abs. 253 [28 O.O.2d 337], a Probate Court decision from Preble County. There the court, at page 256, stated:

"Mental illness, as defined by the Revised Code of Ohio is as follows: 'Mental illness,' 'mentally ill,' 'Mental disease,' or 'mental disorder,' means an illness which so lessens the capacity of the person to use self-control, judgment, and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under treatment, care, supervision, guidance, or control.

"The testimony disclosed that the gentleman still had a remarkable memory for past events, which in turn indicates that at one time he had had an exceptionally keen, retentive mind. With respect to the present status of the individual, the Court observed the following: that his smile at times is not normal; his eyes do not focus properly at all times; his gait and reflexes are not normal; and that he is not laying his cane aside, but is dropping it.

"These are indications of the lessening of the gentleman's mental capacities. Just what has caused this is not known to the Court. Perhaps there has been arterio sclerosis [*sic*] or cerebral accident. In any event, there has been a deterioration which would be called mental illness.

"The second question which must be answered is, can he deal at arm's length? There are instances which have been cited which indicate that he can. However, this gentleman has parted with some two thousand dollars during the last six months and there is no indication that he received proper service or value therefor. In view of this, the Court must find, and does so find, that he is subject to undue influence."

The court in *Tyrrell, supra,* found that guardianship was appropriate. This was based on the court's own observation of the proposed ward and the testimony of two doctors who had examined the proposed ward for some fifteen minutes. This court has reservations about imposition of an involuntary guardianship even with this type of evidence.

Imposition of an involuntary guardianship should be treated as an extremely serious matter. After all, an involuntary guardianship deprives the proposed ward of his or her rights to any and all but the most meaningless legal or financial decisions.

It was this seriousness which caused the Court of Appeals for Fairfield County to terminate a guardianship in the case of *Rhoads* v. *Rhoads* (1927), 29 Ohio App. 449. In that decision the court, at page 455, stated:

"It certainly cannot be expected that a man advanced in years will retain the same mental powers at 80 that he

possessed in his younger years. It occurs to us that that can hardly be expected, and we are quite sure that the law does not contemplate such a condition.

"In passing we need but suggest that a person's memory may be impaired, his body may become weak and feeble by reason of age or other infirmities. He may occasionally at times ask questions that may seem out of place, or he may repeat questions and conversations, and may be forgetful at times, yet it cannot be said that such are the constituent elements of and the only test of mentality, and that under such circumstances one is unable to care for his estate and property interests, or that by reason of same he is mentally incapacitated for caring for and preserving an estate of $7,000."

Might it be said that often the imposition of involuntary guardianship results from a desire to preserve an estate for inheritance by potential heirs rather than a desire to protect and preserve that estate in the interest of the proposed ward. It has long been established law in Ohio, that guardianship proceedings "are not *inter partes,* or adversary in their character." *Shroyer* v. *Richmond* (1866), 16 Ohio St. 455, 465. This is because such proceedings are, in theory, in the best interests of the proposed ward.

A most interesting commentary on involuntary guardianship is found in 73 Yale L. J. 676. The *Tyrrell* case, *supra,* is discussed at some length in that article. The author states at pages 676-677 that:

"* * * Despite the severe incursions of an involuntary guardianship upon individual freedom, courts use non-adversary procedures in adjudicating competency and do not hesitate to impose a guardianship in even doubtful cases. Non-adversary hearings are justified on the ground that only the individual's best interests are at stake: in theory, there is no one before the court who has an interest adverse to that of the potential ward. But, in fact, there will often be interests quite opposite to those of the potential ward. Relatives, creditors and potential heirs may have reasons to wish wardship imposed. The possibility of conflict and the weakness of a non-adversary hearing may best be seen in the treatment of the aged. An elderly individual, having collected considerable funds over a lifetime of savings, may begin to show signs of senility, the inevitable deterioration of old age, as well as a change in consumption patterns. Relatives interested in receiving inheritances may then be able to secure their expectations of inheritance by obtaining the imposition of involuntary guardianship, curtailing the aged's ability to spend what he has amassed. The effectiveness of guardianship for their purposes of estate conservation is enhanced by procedures which favor family interests and offer little real protection to the individual seeking to avoid the imposition of guardianship upon himself."

Because of the non-adversary nature of the proceedings, there appears to be no required degree of proof in such proceedings. Perhaps the closest that this court has been able to find in its research is a statement in *In re Guardianship of Wilson* (1926), 23 Ohio App. 390. There the court, at page 393, stated:

"We are inclined to believe that the following rule would be safe to apply in such cases as the instant one: That the court, before appointing a guardian for an alleged incompetent, should be fully and completely satisfied that the claimed infirmity or infirmities of the alleged incompetent are of such a nature and character as to prevent such person from fully and completely protecting herself and property interests from those about her who would be inclined to and would take advantage of such person in the way of securing her property or means without giving proper service or value therefor. In other words, *it should be found to be to the interest of the person claimed to be incompetent to have such guardianship,* and, if such a condition is found, a court should have no hesitancy in promptly appointing

a guardian to look after the property and interests of such person." (Emphasis added.)

For these reasons, this court feels that the degree of proof required should be clear and convincing evidence. Once a guardian has been appointed, the ward can no longer direct the disposal of his own property, create legal relations, enter contracts, or transact any other business. While he or she may remain physically unconfined, mentally there is almost total confinement. Thus, the consequences to the proposed ward are so drastic that nothing less than this degree of proof will adequately protect the rights of that person.

In those cases in which the application for appointment of a guardian is contested, there should also be, as a minimum, one medical examination of the proposed ward conducted by an independent source appointed by the court. This examination should be thorough, not merely a fifteen minute examination supplemented by hearsay. Where the proposed ward is physically not present for the hearing on the application for the appointment of a guardian, such a medical report is imperative to insure some independent, unbiased evidence of the proposed ward's mental condition.

Further, if the person who is the subject of the application is physically unable to be present at the hearing, the appointment should be delayed until the court has had the opportunity to observe that person.

For the reasons given, the judgment of the Court of Common Pleas, Probate Division, Butler County, Ohio, is reversed and this cause is dismissed.

*Judgment reversed.*

CASTLE, P.J., HENDRICKSON and KOEHLER, JJ., concur.