JOURNAL ENTRY AND OPINION
Respondent-appellant Maureen Davis (appellant) appeals from the order of probate court appointing a guardian over her person.
Appellant assigns the following errors for review:
 I. WHETHER THE PROBATE COURT ABUSED ITS DISCRETION IN FINDING THAT THE APPELLANT SUFFERED FROM A MENTAL IMPAIRMENT SO SEVERE THAT IT RENDERED HER INCAPABLE OF CARING FOR HERSELF OR HER PROPERTY.
 II. WHETHER THE PROBATE COURT ABUSED ITS DISCRETION IN FAILING TO PROPERLY CONSIDER LESS RESTRICTIVE ALTERNATIVES TO GUARDIANSHIP.
Finding the appeal to lack merit, the judgment of the trial court is affirmed.
 I.
On May 10, 1999, Michael Debs, a health inspector with the City of Cleveland's Department of Health, went to appellant's home in the company of Cleveland Police officers and Christina Rakowsky, a social worker for the Cuyahoga County Department of Human Services, Adult Protective Services Division. Numerous complaints and referrals were made since 1976 about appellant and the condition of her home. Alice Gilliland, appellant's sister, purchased the house in 1991 for the purpose of providing appellant with a place to live. Rakowsky first met appellant in 1996 after she received a self-neglect referral regarding appellant. Appellant refused any services and did not permit Rakowsky or anyone else to enter her house. Rakowsky went back to the home over the years in response to other referrals but met with the same response from appellant.
Debbs, the health inspector, also had been to the residence a number of times over the previous two to three years. No one would respond to his knocks on the door or to the notes Debbs left in the mailbox or under the door. Cleveland Police Officer Riley was familiar with appellant and her home. In the spring of 1999, Officer Riley observed appellant in the middle of the street, yelling at two neighborhood children. Officer Riley approached to see if he could be of assistance. He noted appellant had open sores on her face and arms. Appellant appeared to be disheveled and had not bathed for some time. Appellant refused to tell Officer Riley her name or any other information. Instead, she walked toward her house. Officer Riley stood between appellant and her residence to ask when appellant last had medical attention. Appellant responded it was none of his business and entered her home. Officer Riley saw the house contained garbage which was piled up inside and noticed a rancid smell coming from the house. Officer Riley contacted his superior and appellant was transported to the hospital for treatment.
Appellant also had refused an offer from the housing director of the Westown Community Development Corporation to assist her in maintaining the exterior of the property.
Finally, the City of Cleveland obtained a warrant to allow the Environmental Health Department to enter the residence. Upon the arrival of Inspector Debbs, Officer Riley, and Rakowsky, appellant appeared from a neighbor's home and refused to permit them to enter her house at first. She did open the door after Inspector Debbs explained they had a search warrant. Inside, Inspector Debbs noted that clothing, unopened cans of food, opened cans of cat food, and refuse were strewn about the premises. Cat and dog feces were present. The electricity did not work and twenty-six kerosene cans were found in the house. Ten to twelve of the kerosene cans were full and surrounded by garbage. One dog and twelve to fifteen cats were living there. The premises were infested with insects including fleas and cockroaches. Evidence of the presence of rodents was observed. The police transported appellant to St. Vincent's Charity Hospital where she was admitted into the psychiatric ward. Debbs returned the following day, using a protective suit he had borrowed from the air pollution department to enter the house.
The Department of Public Health issued an order to abate nuisance. The order declared the conditions present in the house were a threat to the immediate health and safety of the occupant. The order stated the house was uninhabitable in its present condition. Appellant received a copy of this order but made no attempt to arrange for the property to be cleaned. Gilliland did hire a cleaning crew. Three people spent ten days cleaning the house and clearing it of debris. All three wore protective clothing while working at the house.
On June 3, 1999, probate court issued an emergency protective services order. On July 21, 1999, an application for the appointment of a guardian was filed in probate court. The application alleged appellant to be incompetent by reason of mental impairment.
Probate court held a hearing on the application. In addition to hearing the testimony of several witnesses, including Rakowsky, Debbs, Officer Riley, and appellant, the court also admitted into evidence the depositions of Dr. Goldman and Dr. Wilkes. Dr. Goldman examined appellant while she was staying at a nursing home. Dr. Goldman found appellant to be extremely agitated, hostile, reserved, suspicious, guarded, and delusional. He considered appellant's judgment and insight to be very disturbed and felt there was a high probability she suffered from an Alzheimer's type of dementia. Dr. Goldman believed appellant required a guardian.
Dr. Wilkes became involved in appellant's care upon her admission to the psychiatric unit at St. Vincent Hospital. Dr. Wilkes found appellant's manner to be very intense. She was in denial about her problems. Dr. Wilkes opined appellant suffered from mild dementia but diagnosed her primary problem as a severe obsessive compulsive personality disorder which would cause appellant to hoard possessions. Dr. Wilkes concluded appellant needed a guardian because he did not believe she was capable of conducting her business affairs by herself. His opinion was that appellant was not mentally competent.
Probate court granted the application for an appointment of a guardian of appellant's person. The court concluded appellant suffered from dementia and severe obsessive compulsive disorder. Her ability to care for herself or her property was impaired because of a mental illness. Probate court declared appellant to be incompetent as defined under R.C.2111.01(D).
 II.
In her first assignment of error, appellant contends probate court abused its discretion by finding she suffered from a mental impairment severe enough to make her incapable of caring for herself or her property. Appellant asserts the evidence about the condition of her residence was not enough to justify a finding of incompetency and was against the manifest weight of the evidence.
Under R.C. 2111.01(D) an incompetent person is defined, inter alia, to mean:
 [A]ny person who is so mentally impaired as a result of a mental or physical illness . . .
 that he is incapable of taking proper care of himself or his property. . .
R.C. 2111.02(A) permits the probate court to appoint a guardian of the person, of the estate, or of both for an incompetent person. R.C.2111.02(C) sets forth the procedure to be followed. Probate court is required to conduct a hearing before a guardian may be appointed for an alleged incompetent. The burden of proving incompetency is by clear and convincing evidence. The court is to consider evidence of a less restrictive alternative if it is introduced at the hearing and may deny a guardianship if it finds that a less restrictive alternative exists. Probate court must find a person is mentally impaired before it can conclude he or she is incompetent. In re Bolander (1993),88 Ohio App.3d 498.
Probate court enjoys broad discretion in matters involving the appointment of a guardian. In re Guardianship of Schumacher (1987),38 Ohio App.3d 37. In matters relating to guardianships, probate court must act in the best interests of the incompetent.
In re Estate of Bednarczuk (1992), 80 Ohio App.3d 548. Even so, when an alleged incompetent objects to the appointment of a guardian, the probate court must be extremely cautious in proceeding. In re Guardianship of Corless (1981), 2 Ohio App.3d 92.
Appellant asserts the findings of probate court were against the manifest weight of the evidence. In determining whether a judgment is against the manifest weight of the evidence, an appellate court must be guided by the presumption that the findings of fact made below were correct. This is because the trier of fact observes the witnesses and their demeanor, gestures, and voice inflections, making the fact finder the best judge of credibility. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. Judgments supported by some competent, credible evidence going to all the essential elements will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279.
Appellant first argues the trial court abused its discretion by appointing a guardian based upon the condition of her home. Appellant ignores the overwhelming evidence submitted below regarding the deplorable conditions of her residence. Refuse was strewn throughout the home. Animal feces, rodents, insect infestations, opened cat food, and clothing were among some of the items found within the home. Three men spent ten full days cleaning and removing debris from the house. People donned protective suits before entering. The electricity did not work and appellant used kerosene in the house. Full and empty containers of kerosene were nestled in among the garbage, creating a fire hazard. Appellant remained in denial about the horrendous condition of the home. She claimed a neighbor boy helped clean and constantly stated the house was not that bad.
Evidence admitted at the hearing supported probate court's determination that appellant could not care for herself. Appellant argues there was testimony indicating she sought medical care, bathed, conducted financial transactions, and cooked. She did not appear malnourished. Appellant contends this evidence demonstrates her competency to care for herself. However, testimony admitted below also demonstrated appellant had open sores on her face and arms at one point. Because of her severe obsessive compulsive personality disorder, appellant hoarded possessions and animals. She exhibited these traits while staying with friends and at the hospital. This disorder directly led to the terrible conditions in which appellant resided before her removal by the police. Probate court had ample evidence before it indicating that the deplorable state of appellant's home showed she required a guardian to help safeguard her person.
Appellant maintains the evidence adduced at the hearing showed her ability to conduct her daily affairs such as shopping, cooking, cleaning, bathing, and seeking medical attention. Appellant apparently ignores any evidence to the contrary when making this argument. Appellant obviously could not care for her home. The electricity was not repaired and appellant utilized kerosene, creating a fire hazard. Appellant stated several times that she did not like living in the home but there was very little prospect she could obtain suitable housing on her own. Officer Riley observed appellant with open sores on her face and arms. He described her appearance as disheveled and dirty. All of this evidence strongly shows appellant was not capable of managing her daily affairs and had become a danger to herself.
Appellant claims probate court abused its discretion by admitting the expert testimony of Dr. Goldman. Appellant argues Dr. Goldman did not state his conclusion regarding her need for a guardian to a sufficient degree of scientific certainty. Dr. Goldman stated that, because of appellant's Alzheimer's type dementia, it would be difficult and dangerous for her to act independently in the community. Dr. Goldman went on to surmise that he believed it was his suggestion appellant needed a guardian.
Generally, an expert's opinion is competent only if the expert holds that opinion to a reasonable degree of scientific certainty. Azzano v. O'Malley-Clements (1998), 126 Ohio App.3d 368. However, an expert is not required to recite any particular words. Instead, the testimony, when considered in its entirety, must be equivalent to an expression of probability. Frye v. Weber Sons Service Repair, Inc. (1998),125 Ohio App.3d 507.
After considering Dr. Goldman's entire testimony, it is clear Dr. Goldman did not believe appellant capable of living on her own. Dr. Goldman regarded appellant to be definitely delusional and as having had some cognitive impairment which would prevent her from making appropriate decisions about her own life. Dr. Goldman stated appellant exhibited poor judgment and a lack of insight. Based upon the testimony as a whole, the trial court did not abuse its discretion by admitting the evidence.
Appellant also asserts probate court abused its discretion by admitting the testimony of the other expert witness, Dr. Wilkes. Appellant insists Dr. Wilkes' opinion was not admissible because he did not have a neurophysiological examination conducted, speak to any of appellant's relatives, or independently verify whether appellant could handle her daily living activities. Appellant argues that this failure to conduct a more rigorous and thorough assessment makes his opinion unreliable.
Dr. Wilkes examined appellant after she was admitted to St. Vincent's Charity Hospital. He diagnosed appellant with mild dementia but felt her primary problem was a severe obsessive compulsive personality disorder. Dr. Wilkes stated that people affected with this disorder tend to be very fixed and rigid, having a great deal of difficulty throwing anything away. Consequently, they tend to live in filthy, cluttered homes and usually need a guardian if not capable of making reasonable judgments for themselves. Appellant exhibited very poor judgment and was in denial as to the extent of her problems. Dr. Wilkes concluded that appellant was not mentally competent or fully able to conduct her affairs without the aid of someone else because of her poor decision-making.
Dr. Wilkes had sufficient facts before him to arrive at his conclusions regarding appellant's mental condition. Probate court did not abuse its discretion in relying upon Dr. Wilkes' opinion of appellant's competency and need for a guardian.
Appellant's first assignment of error is overruled.
 III.
In her second assignment of error, appellant asserts probate court abused its discretion by not considering less restrictive alternatives to guardianship. Appellant argues the concerns stated by probate court that she would have no where to live or be able to successfully maintain a safe living environment did not justify the appointment of a guardian. Appellant points out that she could be ordered to remove accumulations of trash in a future home or have weekly homemaker services to insure a clean environment. Appellant argues the condition of her home was a matter for the health department and not probate court.
R.C. 2111.02(C)(5) and (6) require a probate court to consider evidence of a less restrictive alternative if such evidence is introduced. Probate court may deny a guardianship if it finds a less restrictive alternative exists. The statute permits a probate court to exercise its discretion in establishing a guardianship where there is a less restrictive alternative. See In re Guardianship of Bolin (Apr. 18, 1997), Miami App. No. 96-CA-30, unreported.
The evidence submitted at the hearing indicated appellant had consistently refused any offer of assistance in the past. The Cuyahoga County Department of Senior and Adult Services, Adult Protective Services Division, had been aware of problems with appellant since 1976. Over the years, various services were offered to appellant which she refused. Appellant would not allow anyone to enter her home. The social worker for Adult Protective Services testified she made numerous attempts to offer aid to appellant, beginning in 1996. Appellant always told the social worker she was capable of taking care of herself and did not need any help. Appellant would not let anyone inside the house, even her sister. Apparently, the first time someone other than appellant entered the house was when the police and health department descended, in May of 1999, with a search warrant. Appellant stayed with friends but none were willing to have her live with them on a permanent basis. One friend complained appellant's room at the friend's home became cluttered and that appellant was trying to take over her life.
The health inspector visited appellant's home over a period of two to three years. Appellant never answered the door or responded to notes left at the residence. Appellant sprayed water on workers from the city of Cleveland who were trimming her overgrown hedges. Appellant responded to offers of help by retreating into her house and locking the door. Appellant refused any help from the Westown Community Development Corporation which would have helped her with exterior maintenance.
The only evidence admitted at trial about less restrictive alternatives to a guardianship showed that appellant would not be receptive to accepting any of the services now mentioned on appeal. Appellant would not allow anyone to help her clean her home or maintain the outside. She consistently responded to any offer of assistance in the negative and indicated everything was fine. Probate court did not abuse its discretion by appointing a guardian over appellant's person instead of ordering a less restrictive alternative.
Appellant's second assignment of error lacks merit.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY J. McMONAGLE, P.J. and ANNE L. KILBANE, J. CONCUR.
 ___________________ LEO M. SPELLACY JUDGE