OPINION
{¶ 1} Appellants, Arthur McClintock and Joyce Howes, appeal from a Harrison County Probate Court decision dismissing their application for co-guardianship of the person and estate of their father, appellee, William C. McClintock.
 {¶ 2} On July 11, 2002, appellants filed their application with the probate court alleging that their 87-year-old father is incompetent and in need of a guardian. They also filed an affidavit in support of the application and a motion to order a physical examination. Appellants alleged appellee is incompetent because he is unable to manage his own affairs, has been spending large amounts of money with nothing to show for it, and has two travelers living with him, Mary McGaha and Bill Perrigan, who subject him to undue influence.
 {¶ 3} The next day, the probate court issued a notice of hearing on the application for appointment of co-guardians to appellee and his next of kin, scheduling the hearing for August 5, 2002. The parties appeared on the scheduled day and by their agreement, the court continued the hearing. The court issued interim orders appointing a physician to examine appellee and placing a restraining order on appellee regarding his financial holdings.
 {¶ 4} On August 9, 2002, Dr. Rajnish Gupta, the examining physician, reported to the probate court that he believed appellee could conduct his business affairs without the aid of a guardian. Additionally, the probate court investigator that met with appellee reported that she did not believe he needed a guardian.
 {¶ 5} The same day, appellants filed a request for production and inspection of documents, seeking primarily bank records to confirm their belief that appellee had spent more that $100,000 in a few months' time, primarily on gambling and on purchases for McGaha and Perrigan. On August 21, 2002, appellee filed a motion to dismiss the application for appointment of guardianship based on the physician's and the investigator's reports. He also filed a motion for a protective order from appellants' request for production and inspection of documents.
 {¶ 6} The court held a hearing on appellee's motion to dismiss the guardianship application on October 7, 2002. On November 25, 2002, the probate court issued its judgment entry, dismissing appellants' application for guardianship. The court noted that before it could find that appellee was incompetent it would have to find that he was mentally impaired by a mental or physical illness. Based on the information provided by the examining physician and the court investigator, the court found that appellee had no mental or physical illness that rendered him mentally impaired. Appellants thereafter filed their timely notice of appeal on December 27, 2002.
 {¶ 7} Appellants raise one assignment of error, which states:
 {¶ 8} "THE TRIAL COURT ERRED IN DISMISSING THE APPLICATION FOR APPOINTMENT OF GUARDIAN OF THE ALLEGED INCOMPETENT WITHOUT CONDUCTING A HEARING ON THE APPLICATION."
 {¶ 9} Appellants allege that the probate court erred in failing to hold a hearing on their guardianship application. They urge the language of R.C. 2111.02(C) providing, "[p]rior to the appointment of a guardian or limited guardian under division (A) or (B)(1) of this section, the court shall conduct a hearing on the matter of the appointment. The hearing shall be conducted in accordance with all of the following" is mandatory. (Emphasis added.) Appellants argue that this section requires that the court conduct a hearing at which appellants, appellee, and all interested parties (in this case, appellee's other children) could appear and present testimony and evidence relevant to the issue of whether appellee is incompetent and in need of a guardian.
 {¶ 10} Next, appellants note that R.C. 2111.041(B) provides that the report of the probate investigator "shall be made a part of the record in the case and shall be considered by the court prior to establishing any guardianship for the alleged incompetent." (Emphasis added). Similarly, appellants add, R.C. 2111.031 provides for the appointment of physicians and experts to examine and investigate an alleged incompetent "to assist the court in deciding whether a guardianship is necessary." (Emphasis added). Appellants argue that language of both statutes implies that conducting a hearing on application for appointment of a guardian is mandatory.
 {¶ 11} Appellants also note that R.C. 2111.04 sets forth the notice requirements in guardianship proceedings and provides in relevant part:
 {¶ 12} "(A) Except for an interim or emergency guardian appointed under division (B)(2) or (3) of section 2111.02 of the Revised Code, no guardian of the person, the estate, or both shall be appointed until at least seven days after the probate court has caused written notice,setting forth the time and place of the hearing, to be served as follows:
 {¶ 13} "* * *
 {¶ 14} "(2) In the appointment of the guardian of an incompetent, notice shall be served:
 {¶ 15} "(a)(i) Upon the person for whom appointment is sought by personal service, by a probate court investigator, or in the manner provided in division (A)(2)(a)(ii) of this section. The notice shall be in boldface type and shall inform the alleged incompetent, in boldface type, of his rights to be present at the hearing, to contest any application for the appointment of a guardian for his person, estate, or both, and to be represented by an attorney * * *.
 {¶ 16} "* * *
 {¶ 17} "(b) Upon the next of kin of the person for whom appointment is sought who are known to reside in this state.
 {¶ 18} "* * *
 {¶ 19} "(D) From the service of notice until the hearing, no sale, gift, conveyance, or encumbrance of the property of an alleged incompetent shall be valid as to persons having notice of the proceeding." (Emphasis added.)
 {¶ 20} Appellants argue that, per this section, service of notice of the hearing on the application for appointment of a guardian is mandatory and extends not only to the prospective ward, but to the next of kin as well. Appellants contend that in this case, appellee and his next of kin were notified of the hearing, but no hearing was held. Appellants contend that, had there been a hearing, they and their brothers would have offered evidence that appellee is illiterate, unable to manage his financial and personal affairs, highly subject to undue influence, actually subjected to undue influence by McGaha and Perrigan, and that in the period of a year's time appellee's bank account had been reduced from an amount in excess of $100,000 to an amount less than $5,000 with no value to show for the expenditures.
 {¶ 21} Finally, appellants point us to In re Guardianship ofCorless (1981), 2 Ohio App.3d 92, 96, where the court found that, "[i]n those cases in which the application for appointment of a guardian is contested, there should also be, as a minimum, one medical examination of the proposed ward conducted by an independent source appointed by the court. This examination should be thorough, not merely a fifteen minute examination supplemented by hearsay." The court further commented, "if the person who is the subject of the application is physically unable to be present at the hearing, the appointment should be delayed until the court has had the opportunity to observe that person." Id. Appellants argue that, because there was never a hearing on the application in this case, they have no way of showing whether Dr. Gupta's examination of appellee was "merely a fifteen minute examination supplemented by hearsay." Similarly, appellants continue, because there was never a hearing, the probate court never had the opportunity to observe appellee and never had the opportunity to receive any testimony or other evidence about his ability to manage his financial and personal affairs and his vulnerability to undue influence.
 {¶ 22} We need not reach the issue of whether a hearing is required in all cases where a party has filed an application for guardianship for an alleged incompetent. In this case, appellant filed a motion to dismiss the application for guardianship. In his motion, appellant referred the court to both Dr. Gupta's evaluation and the court investigator's report. The court, in rendering its decision, stated that it reviewed the "documents in the file including the Investigator's Report and the Statement of Expert Evaluation." When the court did so, it converted appellant's motion to dismiss into a motion for summary judgment. "When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. Provided however, that the court shall consider only such matters outside the pleadings as are specifically enumerated in Rule 56." Civ.R. 12(B).
 {¶ 23} Civ.R. 56(C) lists the types of evidence a court may consider in ruling on a summary judgment motion. They are "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." Civ.R. 56(C). An investigator's report and a statement of expert evaluation are not proper summary judgment evidence. Nonetheless, the court considered them and neither party objected. We have recently noted that although a court is not required to consider improper summary judgment evidence, it may consider such evidence if neither party objects. Chamberlin v. TheBuick Youngstown Co., 7th Dist. No. 02-CA-115, 2003-Ohio-3486, at ¶ 6. Thus, since the trial court considered this evidence and neither party objected, we too will consider it despite its noncompliance with Civ.R. 56(C).
 {¶ 24} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. Cole v. American Indus. Resources Corp. (1998), 128 Ohio App.3d 546, 552. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v. Flemming (1994),68 Ohio St.3d 509, 511. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc.
(1995), 104 Ohio App.3d 598, 603, citing Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 247-248.
 {¶ 25} In the present case three relevant pieces of evidence exist in the record, the investigator's report, the statement of expert evaluation, and Arthur McClintock's affidavit. As we know, the court investigator and examining physician both opined that appellee is able to care for himself and manage his own affairs. Dr. Gupta's evaluation stated that appellee "* * * is [an] elderly gentleman in full control of his mental faculties — he is fully independent coherent." (Statement of Expert Evaluation). The court investigator opined that, at this time, appellee did not have a mental or physical condition that would require a guardianship. She noted that during her interview with appellee, McGaha and Perrigan were not present. The investigator noted that "[appellee] indicated the ability to perform the functions needed to care for his checking account and to pay his bills" and also, "[p]erhaps his family is concerned because he did indicate that he helps his `friend' (the two people residing with him) with money, etc. He said that he believes this is his choice to make." (Report of Probate Court Investigator).
 {¶ 26} But Arthur's affidavit suggests otherwise. The affidavit states that appellee is "aged, infirm, illiterate, and unable to manage his own affairs." It also states that appellee has purchased expensive motor vehicles and other items for McGaha and Perrigan and has withdrawn substantial sums of money from his bank account. The affidavit further states that appellee has threatened to do bodily harm to one of his sons and has threatened to burn down his own house. Additionally, it states that appellee has refused to attend doctor's appointments. Finally, it states that appellee's behavior is "erratic, frequently abusive, and potentially dangerous to himself and others and that he is unable to manage his own affairs for his own benefit and unable to protect himself from the undue influence of Mary McGaha and Bill Perrigan."
 {¶ 27} To be "incompetent" R C. 2111.01(D), a person must be "so mentally impaired as a result of a mental or physical illness or disability, or mental retardation, or as a result of chronic substance abuse, that the person is incapable of taking proper care of the person's self or property." Although Dr. Gupta and the court investigator concluded otherwise, Arthur's affidavit raises a genuine issue of material fact regarding whether appellee may be mentally impaired so that he is incapable of properly caring for himself or his property. Therefore, the trial court should not have dismissed the application for guardianship without holding a hearing. Accordingly, appellants' assignment of error has merit.
 {¶ 28} For the reasons stated above, the trial court's decision is hereby reversed and remanded for a hearing on appellants' application for guardianship.
Waite and DeGenaro, JJ., concur.