JONES, APPELLANT, *v.* JONES, APPELLEE.

(No. 25643—Decided March 8, 1962.)

*Mr. Carl A. Mintz*, for appellant.
*Messrs. Thompson, Hine & Flory*, for appellee.

SKEEL, J. This appeal comes to this court on questions of law from a judgment and decree entered for the defendant on the

defendant's cross-petition and dismissing plaintiff's petition. The original action was for alimony. The defendant's answer denied all the allegations of the petition and by cross-petition, designated "cross-petition for a declaratory judgment declaring the status of the parties," prayed for a declaration of the marital status of the parties. No service of any kind was had on the cross-petition.

The plaintiff's petition alleges, *inter alia*, that the parties were married at Angola, Indiana, on May 18, 1955. The evidence shows that a ceremonial marriage was conducted at that time under the laws of Indiana. After the marriage, the parties lived as husband and wife, he being away for the most part during the week because of his work as a traveling salesman, returning and cohabiting as husband and wife with the plaintiff over the weekends. They moved a number of times because of his change of employment. During much of this time plaintiff, at defendant's request, continued to work, using her maiden name so that his mother would not know of the marriage. While they lived together as husband and wife from 1955 to 1959, he borrowed all her savings which have not been returned.

The defendant is charged with gross neglect of duty and by reason thereof the parties have been separated. The evidence shows that the plaintiff at the time the action was filed had not been a resident of Ohio for a sufficient period of time to seek a divorce.

The cross-petition alleges, *inter alia*, that the defendant was married to Eleanor Jones in Cincinnati, Ohio, in December 1937, and that there were five children by that marriage. The defendant alleges further that he is still married to Eleanor Jones and asks that the status of this plaintiff and defendant, as to whether the marriage which he contracted with this plaintiff was, in fact, a valid marriage, be determined.

The plaintiff, by answer to the cross-petition, denies that a declaratory judgment would finally adjudicate the matter complained of by the defendant.

By second defense, the plaintiff admits the marriage of defendant to Eleanor Jones in Cincinnati, on December 31, 1937, and denies all other allegations of the cross-petition seeking a declaratory judgment.

Upon trial, the court found on the cross-petition for a de-

claratory judgment that there had been a valid marriage between this defendant and Eleanor Jones, that in an action which the defendant thought was for divorce but which was, in fact, an action for alimony and custody which after several hearings resulted in this defendant being awarded custody of his children and that since such marriage had, therefore, not been dissolved, his marriage to plaintiff was null and void.

The court thereupon entered a decree under the cross-petition declaring the marriage of this plaintiff to the defendant void and stating that, since these parties had never been married, the plaintiff's petition was, therefore, dismissed.

The right to maintain an action in equity seeking an annulment of a contract of marriage has been recognized by some courts under circumstances where property rights or the duties or the obligations of support of children are not involved in the case. *Nyhuis* v. *Pierce*, 65 Ohio Law Abs., 73.

However, the *Nyhuis case* is clearly distinguishable from the case here considered. In that case, Miss Sampsell, in 1918, entered into a common-law marriage with one Kohler after procuring a marriage license from Probate Court. Such relationship was clearly established by declaration and conduct. At a subsequent time she was in doubt as to her marital status because her husband refused to go through a ceremonial marriage. The husband then introduced her to Nyhuis who, he said, was a good, honest man and would make a good home for her. Thereupon, Nyhuis and Miss Sampsell, returning the marriage license procured in 1918 to Probate Court, procured a marriage license for themselves and a ceremonial marriage between Nyhuis and Miss Sampsell was performed by a justice of the peace upon the authority of such a license. The opinion, quoting the record, then sets out:

" 'When we went home [after her marriage to Nyhuis] Mr. Nyhuis was a bartender and he worked evenings, he went to work in the afternoon and when he came home and went to bed he said, "You sleep on the davenport, the bed is mine." Then on Saturday evening a lady came to the home and she became familiar with Mr. Nyhuis. I said "He is my husband. If you feel that way, I won't live in the same house. I want a home," and I left the house that day and I never saw the man until Mr.

Goette pointed him out in the courtroom. I wouldn't have known the man and that's the truth, Judge.' "

Willda (Sampsell) Kohler then returned to and lived with Harry Kohler as man and wife until he abandoned her and their child (born while they were living as man and wife) in 1922. Willda Kohler then (in 1925) married Frank Pierce with whom she was living when this action was commenced, Kohler having died prior to 1932. Under the foregoing facts, the use of an action in equity to annul a bigamous marriage, where the parties thereto had never consummated such pretended marriage, was supported, at the time the *Nyhuis case* was decided, by the case of *Smith* v. *Smith*, 72 Ohio App., 203.

The distinguishing facts in this case from these just recited in the *Nyhuis case* (the purpose of which case was to end by a legal proceeding an apparent legal relationship that had never been legally created or carried on or indulged in by the parties) are, that in the case at bar the plaintiff was the innocent victim of the defendant cross-petitioner's wrong where, for almost five years, she was deluded into continuing the marital relation with the defendant, created by their solemn agreement and subsequent conduct, and which he now wants to cast aside without giving his victim her day in court.

In the case of *Smith* v. *Smith, supra,* the defendant, Ruth Kuh Smith, had been married by ceremonial marriage to Julius Kuh on June 30, 1929. There was a child born of such marriage. The parties separated in September 1932. Both parties wanted a divorce at the earliest possible time it could be procured and finally selected the procedure of petitioning therefor in Mexico under Mexican law. An action was begun in Mexico in September 1933, and a final decree was entered on October 9, 1933, without either party having left the United States. The plaintiff (Smith), knowing of the Mexican proceeding, proposed marriage to Mrs. Kuh in August 1933, and, in December 1933, a ceremonial marriage was had between them in Stamford, Connecticut. The parties then moved to Ohio. They separated in 1941, and an action was instituted by the plaintiff seeking a declaratory judgment declaring their marriage null and void for the reason that the defendant had a husband living at the time of her marriage to the plaintiff. The defendant denied the allegations of

the petition and filed a cross-petition for divorce and alimony. Upon the trial of the issues the trial court held the divorce in Mexico was without legal effect and that both parties being *"in pari delicto* prevented any decree of any sort based on these findings." The Court of Appeals modified the decree of the trial court by granting a declaration that the parties had never been married because the Mexican divorce was invalid and affirmed the trial court in refusing all other relief prayed for by either party. The Court of Appeals said in the third paragraph of the syllabus:

"3. When a marriage ceremony is performed that is void because one of the parties is married to another at the time, either party may maintain an action for a decree declaring such ceremony a nullity."

In the case of *Short* v. *Short*, 61 Ohio Law Abs., 49, the action was for divorce. Defendant cross-petitioned for divorce. Judgment was entered granting plaintiff a divorce, coupled with a division of property. After term, the judgment was vacated because the defendant, by motion, set up that the plaintiff had a husband living when she was married to him. Upon vacation of the judgment, the defendant amended his cross-petition seeking annulment, including a prayer for the return of property and asking an accounting for income therefrom. The trial court entered a decree of annulment and divided the property. On appeal, the appellate court affirmed the annulment but reversed the order of the division of property, holding that, where a marriage was null and void at its inception and that status established by decree, the property rights of the parties are only such as attach to persons in an individual capacity and are not the rights thereto which attach by reason of the relationship of husband or wife. That case, as is true of the *Smith case, supra*, was clearly overruled by the *Eggleston case*, next to be considered.

In the case of *Eggleston* v. *Eggleston* (1952), 156 Ohio St., 422, the facts were that the parties were married by a ceremonial marriage in Akron, Ohio, on July 3, 1941, and two children were born of the marriage. The wife filed an action for divorce. The defendant answered that the parties were never married, the claim being made that he had a wife living when he married the plaintiff. The plaintiff then amended her petition by alleging

that she had no knowledge of the facts set out in defendant's answer, but, if they were true, she, by a second cause of action, prayed for a divorce on the grounds that the defendant had a wife living when he married her.

A referee found that while the defendant had obtained a purported divorce from his first wife, the court granting the divorce was without jurisdiction, which fact was not known to the defendant "until recently."

The amended petition of the plaintiff alleged not only that she believed the representations of the defendant that he was divorced from his first wife and, therefore, entered into a ceremonial marriage, but that two children had been born and that the parties were the owners of certain property.

Upon trial, the first cause of action was abandoned and it was agreed by stipulation that the defendant's first wife was still living. The trial court found that the marriage of the parties to the action was null and void and that the court was without power to award alimony or support to the minor children or any relief whatsoever other than the annulment. The Supreme Court, in reversing the decision, in its opinion set out the fact that by Section 11979, General Code (Section 3105.01, Revised Code), the grounds for divorce included:

"1. That either party had a husband or wife living at the time of the marriage from which the divorce is sought;

"* * * *

"6. Fraudulent contract;"

The court also said that Section 11990, General Code (Section 3105.18, Revised Code, amended), provides that when a divorce is granted because of the aggression of the husband the court will, if the wife desires, restore her former name and grant alimony.

Section 11991, General Code (Section 3105.18, Revised Code), also provided that alimony may be allowed in personal property or real property, payable in gross or otherwise, as ordered by the court. (See comment of Director of Code Revision under Section 3105.16, Revised Code, which now deals only with restoration of name. The alimony provision, as amended, is now Section 3105.18, Revised Code, the only change in substance being that the court may allow alimony to either party regardless of fault.)

The court refers to *Smith* v. *Smith*, 5 Ohio St., 32, where Judge Swan said that another object of this provision (ground for divorce number one above quoted) was probably to give alimony to the second wife of a man who had a former wife living.

The Supreme Court came to the same conclusion on similar facts in *Van Valley* v. *Van Valley*, 19 Ohio St., 588, which case is cited on page 427 of the *Eggleston* opinion. The court, on page 428 of the opinion, then states:

"* * * In the annulment of the marriage contract, the court instead of considering the plaintiff's case for divorce under the statutory provisions authorizing the same deprives the plaintiff of any consideration of her claim for alimony to which she may be found to be entitled under the statute. * * *"

The court then says that it is the view of the court that Section 11979, General Code, authorizes the granting of a divorce where either party had a husband or wife living at the time of the marriage from which a divorce is sought and provides an exclusive remedy in cases involving that situation, and that in such proceeding the court is authorized to adjudicate the issue of relief incident to granting a divorce. The syllabus provides:

"1. Section 11979, General Code, authorizing the granting of a divorce where 'either party had a husband or wife living at the time of the marriage from which the divorce is sought,' provides an exclusive remedy in cases involving that situation.

"2. Where a decree of divorce is granted on the petition of a woman on the ground that the defendant had a wife living at the time of his marriage with the plaintiff, the court has jurisdiction to grant to the plaintiff alimony and other relief authorized by the statutes on divorce and alimony. (*Van Valley* v. *Van Valley*, 19 Ohio St., 588, approved and followed.)"

That case, decided in January 1952, subsequent to all but one (*Nyhuis case*) of the appellate court cases here cited (the facts of such subsequent case having been distinguished) clearly shows that the law of the *Smith* and *Short cases* has been overruled and that on the undisputed facts in this case, by applying the law of the *Eggleston case*, the plaintiff is entitled to try the case presented by her petition and that a declaratory judgment seeking an annulment is not the proper procedure to put in issue the allegations of such petition. The Supreme Court in effect

held that when special laws have been passed whereby rights and duties concerned with domestic relations are governed, the remedies therein provided are exclusive.

The fact that this action is for alimony and that the ground of having a former husband or wife living at the time of the marriage for which a divorce is sought is not set out as a ground for alimony does not authorize the defendant as a defense to such action to seek what is tantamount to a divorce by a declaratory judgment action seeking a declaration as to the legal status of the parties.

In Borchard on Declaratory Judgments (Second Edition), 342, under the heading, "Special Statutory Remedy for Specific Type of Case," it is said:

"It has already been noted that the declaratory action was not designated to interfere with the jurisdiction of special courts, but that on the contrary courts within their respective jurisdictions over persons and subject matter were authorized by the Declaratory Judgment Acts to render declaratory judgments. Thus, when a probate court has jurisdiction over the construction of wills and matters of guardianship, it was not intended that courts of general jurisdiction should oust the jurisdiction of such special tribunals. In analogy thereto, where a special *statutory* procedure has been provided as an exclusive remedy for the particular type of case in hand, such as income tax assessment, tax abatement, workmen's compensation, unemployment compensation, annulment of a bigamous marriage, that specific recourse must be followed."

The defendant should not be permitted to seek affirmative relief (that is, a declaratory judgment as to the marital status of the parties) as a matter of defense in an action pending against him in a case where there are special statutes upon the authority on which the plaintiff's petition must be based and the trial of such issues had when lawfully presented are specifically provided for by statute. The plaintiff is entitled to the protection of the divorce laws and the equitable powers of the court acting under the authority of Chapter 3105, Revised Code.

The judgment of the trial court for the defendant on his cross-petition is, therefore, reversed and final judgment is entered for the plaintiff thereon.

From the record of the trial presented to this court by the

transcript and the bill of exceptions, it is clear that the plaintiff, because the defendant had a wife living at the time of her ceremonial marriage with him, could not maintain an action for alimony alone, such action not being provided for by the provisions of Section 3105.17, Revised Code, because such action cannot be maintained unless the parties have been legally married. The plaintiff's petition was correctly dismissed and the judgment entered against her by the trial court is affirmed, such affirmance being without prejudice to any future action for divorce commenced under the provisions of Section 3105.01, Revised Code, and the authority of the *Eggleston case, supra.*

*Judgment accordingly.*

KOVACHY, P. J., and HURD, J., concur.