[Cite as *Nixon v. Day*, 2019-Ohio-3335.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| WILLIAM FREDERICK NIXON, et al. | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiffs-Appellees | Hon. John W. Wise, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2018 AP 120041 |
| TANNY DAY | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:        Civil Appeal from the Court of Common
                                Pleas, Probate Division, Case No.  2018 DJ
                                20545


JUDGMENT:                       Reversed and Vacated


DATE OF JUDGMENT ENTRY:         August 16, 2019


APPEARANCES:

For Substitute Appellees              For Defendant-Appellant

COLIN G. SKINNER                      HARRY C. E. TOLHURST, III
DAY KETTERER, LTD.                    300 East Third Street
581 Boston Mills Road, Suite 400      Dover, Ohio  44622
Hudson, Ohio  44236

*Wise, J.*

{¶1} Defendant-Appellant Tanny Day appeals from the decision of the Tuscarawas County Court of Common Pleas, Probate Division, which granted a declaratory judgment in favor of Donna Miller, guardian for William Frederick ("Fred") Nixon (now deceased).[1] The relevant facts leading to this appeal are as follows.

{¶2} Appellant Tanny Day and the late William Frederick Nixon (hereinafter "Fred") met in early 2014. At that time, Fred's first wife, with whom he had raised two children, had recently passed away. Fred, born in 1941, was struggling with ordinary household chores, and appellant moved in with him, agreeing to help with the necessary work around the house in exchange for room and board. Over time, appellant also began assisting Fred in taking his medications, arranging medical appointments, and other needs. Tr. at 35. However, appellant has conceded that even though they lived together, "it was not a love affair." Tr. at 23. In 2016, Fred named appellant as the sole beneficiary under his will. Tr. at 34.

{¶3} After having resided together under the aforesaid arrangement for several years, Fred and Appellant Tanny went to the Tuscarawas County Probate Court on August 7, 2018, to apply for an Ohio marriage license. According to the deputy clerk's subsequent testimony, Fred appeared confused, could not answer questions, and did not give appropriate responses. Tr. at 105-106. Appellant and Fred did not bring along all necessary documentation for the license, so they returned the next day, August 8, 2018. The clerk of the Tuscarawas County Probate Court did not issue the marriage license that

---

[1]   On May 20, 2019, this Court, upon motion and the filing of a suggestion of death, substituted as appellees Sunny Nixon (daughter and substitute guardian for Fred) and Denis Traver (administrator of Fred's estate).

day, essentially taking the application under advisement. After they left, the clerk expressed concerns about Nixon's competence to the probate magistrate and the court. Tr. at 107.

**{¶4}** On August 10, 2018, appellant asked a friend, Vicki W., to transport her and Fred to Steuben County, Indiana. According to Vicki, Fred again appeared confused. He could not state the number of his prior marriages. Tr. at 83. Appellant Tanny repeatedly went over such basic questions with Fred for "maybe 30 miles." *Id.* Fred could not remember his full address or his children's names. Tr. at 84. When appellant and Fred met with the clerk at the Steuben County marriage license bureau, Vicki observed that Fred incorrectly stated that he had been married four times previously, and that he did not know his children's names. Tr. at 87-88.

**{¶5}** Despite the foregoing, appellant and Fred were issued an Indiana marriage license on August 10, 2018 in Steuben County, Indiana. A local minister thereupon performed a wedding ceremony on the same day. Vicki, who described herself as "very well-versed" regarding dementia and Alzheimer's issues, did not believe that Fred was competent to get married. Tr. at 89. She further thought Fred "had no clue" that he was getting married. Tr. at 91. At the ceremony, Vicki overheard appellant "prompting" Fred. Tr. at 90-91.

**{¶6}** Back in Ohio, the Tuscarawas County probate clerk formally denied the issuance of a marriage license on August 15, 2018. The probate court further granted an application for emergency guardianship, filed on behalf of Fred by Sunny Nixon, his adult child, on August 15, 2018.

{¶7} Appellant later attempted to obtain surviving spouse benefits from Fred's police and fire pension, but this was denied due to the existence of the emergency guardianship. Tr. at 54.

{¶8} On August 20, 2018, a hearing was held on the issue of whether to extend the guardianship. On August 22, 2018, Attorney Donna Miller was appointed as emergency guardian for Fred, and her appointment as guardian was issued on September 5, 2018. On that same day, Attorney Miller (as guardian for Fred), filed a complaint for declaratory judgment, asking the Tuscarawas County Probate Court to annul the Indiana marriage between Fred and Appellant Tanny.

{¶9} The Probate Court conducted a trial on the matter October 10, 2018. At the trial, the probate court indicated that its decision would be based on Ohio law and not whether the marriage was legal or valid under Indiana law. Tr. at 73. Appellant appeared *pro se*, both giving testimony and cross-examining witnesses at the hearing. In addition, Vicki W. took the stand as a witness, as well as Holly Buzzelli, a deputy clerk for the Tuscarawas County Probate Court. The declaratory judgment matter was then taken under advisement.

{¶10} On October 29, 2018, Fred passed away.

{¶11} On November 13, 2018, after Fred's death, the probate court issued its judgment annulling appellant's and Fred's Indiana marriage. In pertinent part, the probate court ruled: "Having considered all evidence admitted into the Record and the sworn testimony of all witnesses, the Court further finds that William Frederick Nixon was not competent to enter into a marriage contract on August 10, 2018. This Court grants Plaintiff's 'Complaint for Declaratory Judgment' and hereby annuls the August 10, 2018

Indiana marriage between William Frederick Nixon and Tanny Day." Judgment Entry at 2.

{¶12} On December 10, 2018, Appellant Tanny filed a notice of appeal. She herein raises the following two Assignments of Error:

{¶13} "I. THE PROBATE COURT DID NOT HAVE JURISDICTION TO ANNUL A MARRIAGE.

{¶14} "II. THE PROBATE COURT DID NOT APPLY THE CORRECT LAW WHEN DETERMING [SIC] WHETHER A MARRIAGE PERFORMED IN INDIANA PURSUANT TO AN INDIANA MARRIAGE LICENSE WAS VALID, IN VIOLATION OF THE 'FULL FAITH AND CREDIT' CLAUSE OF THE UNITED STATES CONSTITUTION."

I.

{¶15} In her First Assignment of Error, Appellant Tanny contends the Tuscarawas County Probate Court did not have jurisdiction to annul her marriage to Fred. We agree.

{¶16} Ohio's annulment statute, R.C. 3105.31, states in pertinent part:

A marriage may be annulled for any of the following causes existing at the time of the marriage:

***

(C) That either party has been adjudicated to be mentally incompetent, unless such party after being restored to competency cohabited with the other as husband or wife[.]

{¶17} A probate court has jurisdiction to grant declaratory judgments under 2101.24(A)(1)(l). Furthermore, a probate court "has plenary power at law and in equity to

dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code." R.C. 2101.24(C).

**{¶18}** In the case *sub judice*, we are faced with a relatively straightforward question: Does a probate court have jurisdiction to grant an annulment within a guardianship action, under the probate court's statutory power to grant declaratory judgments per R.C. 2101.24(A)(1) and/or its plenary powers under R.C. 2101.24(C)?

**{¶19}** Generally speaking, "[a]n 'annulment' differs from a divorce in that a divorce terminates a legal status, whereas an annulment establishes that a marital status never existed." *Slusser v. Klosterman*, 3rd Dist. Mercer No. 10-08-01, 2008-Ohio-2608, ¶ 10, citing Black's Law Dictionary (6 Ed. Rev.1990) 91.

**{¶20}** Prior to the American Revolution, "the [English] civil courts of common law and equity possessed no marital jurisdiction; what we would now regard as jurisdiction over separation and annulment was vested in the ecclesiastical courts, and jurisdiction to grant divorce following a valid marriage resided in Parliament." *Matter of Harman*, 168 N.H. 372, 374, 129 A.3d 311, 313 (2015) (additional citations omitted). However, "[i]n America, there was no established state religion and, therefore, no ecclesiastical court. The void was filled with the enactment of statutes to govern domestic relations matters and the adoption of the rules of chancery for governance of these issues." *Miller v. Miller*, 92 Ohio App.3d 340, 346–47, 635 N.E.2d 384, 388 (6th Dist.1993), citing Clark, The Law of Domestic Relations in the United States (1987) 695, Green, Long & Muransk, Dissolution of Marriage (1986) 12–14, and Walker, Ohio Divorce, Annulment and Child Custody (1981) 14–17. Another commentary has stated: "If [Ohio's Annulment Act is] comprehensive, by implication the act displaces the courts' equity jurisdiction in

annulment existing for over a century and a half prior to enactment of the act." Sowald and Morganstern. Exclusivity of Remedy, Baldwin's Oh. Prac. Dom. Rel. L. § 7:5 (4th Ed.). In any event, Ohio does not recognize any form of common-law divorce, dissolution or annulment. *See Heyne v. Finser*, 9th Dist. Summit No. 9161, 1979 WL 207641.

**{¶21}** R.C. 3105.011(A), states that "[t]he court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all *domestic relations matters.*" (Emphasis added). By statute, Tuscarawas County has two common pleas judges, but is not allotted a domestic relations division judge. *See* R.C. 2301.02, 2301.03.[2] In such counties, domestic relations cases are handled by the general division. *See Kopp v. Begley*, 2nd Dist. Miami No. 2004 CA 28, 2005-Ohio-1210, ¶ 14 (addressing Miami County's judgeships). As this Court has previously stated, "*** pursuant to R.C. 2301.02, the general division judge and the domestic relations judge are one and the same." *Devault v. Devault*, 5th Dist. Ashland No. 03COA035, 2004-Ohio-976, ¶ 21 (addressing Ashland County's judgeship).

**{¶22}** Thus, it still must be decided whether jurisdiction for a ward's annulment action lies in a domestic relations action in the domestic relations court (or, in some Ohio counties, the general division), in probate court as a declaratory judgment action, or in both courts concurrently. It is often recognized that proceedings in probate court are restricted to those actions permitted by statute and by the Constitution, since the probate court is a court of limited jurisdiction. *See Phillips v. Phillips*, 5th Dist. Richland No. 12CA119, 2013-Ohio-3025, ¶ 13, quoting *Corron v. Corron,* 40 Ohio St.3d 75 (1989), paragraph one of the syllabus. Furthermore, "[t]he purpose of guardianship hearings is to

---

[2] Probate judge elections are addressed in R.C. 2101.02.

gather information in order to determine the best interests of the prospective ward." *In re Guardianship of Stancin,* 10th Dist. Franklin 02AP-637, 2003-Ohio-1106, ¶ 12, citing *In re Estate of Bednarczuk* (1992), 80 Ohio App.3d 548, 551, 609 N.E.2d 1310; *In re Guardianship of Corless* (1981), 2 Ohio App.3d 92, 95, 440 N.E.2d 1203. But at the same time, "the purpose of a declaratory judgment action is to dispose of uncertain or disputed obligations quickly and conclusively, and to achieve that end, the declaratory judgment statutes are to be construed liberally." *Estate of Parkins v. Parkins*, 3rd Dist. Allen No. 1-18-50, 2019 WL 2171938, ¶ 10 (additional citations and internal quotations omitted).

{¶23} Nonetheless, it is a well-established principle of statutory construction that specific statutory provisions prevail over conflicting general statutes. *Wehr v. Div. of Oil & Gas Resources Mgt.*, 10th Dist. Franklin No. 17AP-855, 2018-Ohio-5247, ¶ 15, citing *State v. Chippendale*, 52 Ohio St.3d 118, 120 (1990). Specifically, "*** declaratory judgment statutes provide an additional remedy which may be granted by a court but they do not extend the jurisdiction as to the subject matter upon which a court may act." *State ex rel. Foreman v. Bellefontaine Mun. Court*, 12 Ohio St.2d 26, 28, 231 N.E.2d 70, 71 (1967). Likewise, "*** where a special statutory procedure has been provided as an exclusive remedy for the particular type of case in hand, such as income tax assessment, tax abatement, workmen's compensation, unemployment compensation, annulment of a bigamous marriage, that specific recourse must be followed." *Jones v. Jones*, 115 Ohio App. 358, 365, 180 N.E.2d 847, 851 (8th Dist.1962), citing Borchard, Declaratory Judgments, Second Edition, at 342 (emphasis omitted).

{¶24} Appellees' responsive argument to the present assigned error is essentially two-fold. They first present a jurisdictional priority theory, *i.e.*, they support the propriety

of a declaratory judgment by the probate court that the Indiana marriage is void *ab initio* by pointing out that appellant and Fred already had a pending application for marriage in Tuscarawas County at the time they applied for an Indiana marriage license. Accordingly, appellees contend that the Indiana authorities thus had no legal right to grant a marriage license in the first place. However, we find no merit in this responsive argument based on the requirements of the Full Faith and Credit Clause, Article IV, Section 1, of the United States Constitution.

**{¶25}** Appellees secondly urge in response that R.C. 3105.011, *supra*, does not explicitly divest the probate court of jurisdiction for domestic relations matters. However, we reiterate that this case originated as a declaratory judgment action, not a formal annulment complaint under R.C. 3105.31 brought by a guardian. In fact, the judgment entry under appeal never once cites R.C. 3105.31.

**{¶26}** By analogy, it has been recognized that if necessary, a guardian is entitled to file a divorce action on a ward's behalf. *See Broach v. Broach*, 2nd Dist. Montgomery No. 22225, 177 Ohio App.3d 664, 2008-Ohio-4132, 895 N.E.2d 640, ¶ 12, citing Civ.R. 17(B) and 75(A). We find no reason why the same rule would not apply regarding an annulment action. Construing the existing statutes and case law, we hold that any action seeking annulment for a guardian's ward must be brought as a statutory domestic relations complaint under R.C. Chapter 3105 in the pertinent county's common pleas domestic relations division, or if none, the general division, and that a probate court's invocation of its general declaratory judgment powers does not supplant the General Assembly's intent to have such matters heard as domestic relations cases.

**{¶27}** Appellant's First Assignment of Error is therefore sustained.

II.

**{¶28}**  Appellant's Second Assignment of Error is found to be moot based on our aforesaid conclusions.

**{¶29}**  For the foregoing reasons, the judgment of the Court of Common Pleas, Probate Division, Tuscarawas County, Ohio, is hereby reversed and vacated.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

JWW/d 0725